UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ENVIRONMENTAL LAW AND POLICY CENTER, et al., | ) | |
| Plaintiffs, | ) | |
| | ) | No. 3:19-cv-295 |
| v. | ) | |
| | ) | Hon. James G. Carr |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | ) | |
| Defendants. | ) | |

REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS

# INTRODUCTION AND SUMMARY

Plaintiffs' Complaint should be dismissed because Plaintiffs have not demonstrated that either Count 1 or Count 2 states a claim, or that the Court has jurisdiction over Count 2.

Count 1 asserts that U.S. EPA acted arbitrarily when U.S. EPA approved Ohio's decision to assign western Lake Erie a low priority ranking as part of Ohio's submission of its 2018 list of impaired waters. This Court has already held that U.S. EPA does not "review or pass judgment on a state's priority ranking." *Envtl. Law & Policy Ctr. v. EPA*, 349 F. Supp. 3d 703, 712 (N.D. Ohio 2018) (*ELPC I*). Plaintiffs' attempts to distinguish *ELPC I* are unconvincing and should be rejected. Because U.S. EPA reviews only whether a state has assigned priority rankings to impaired waters and does not review the substance of those priority rankings, Count 1 fails to state a claim.

Count 2 asserts that Ohio constructively submitted no TMDL for western Lake Erie, triggering an alleged non-discretionary duty by U.S. EPA to approve or disapprove. To the extent the Clean Water Act ("CWA") allows for citizen enforcement in that situation, this Court has

1

already held, in the context of Ohio's 2016 integrated report, that Ohio has not "clearly and unambiguously decided not to submit any TMDLs," which is the necessary legal standard for a constructive submission claim. *Id.* at 716 (internal quotations and citations omitted). The only thing that has changed since *ELPC I* is that Ohio has submitted its 2018 integrated report,[1] but Plaintiffs do not, and cannot, allege that Ohio's 2018 submission constitutes a clear and unambiguous refusal to submit a TMDL for the Lake. Count 2 therefore also fails to state a claim.

## ARGUMENT

### I.  Count 1 Fails to State a Claim for Arbitrary and Capricious Approval of the Priority Ranking in Ohio's 2018 Section 303(d) List Submission.

Count 1 asserts that U.S. EPA violated the APA when it "reviewed and approved" the priority ranking Ohio assigned to western Lake Erie in 2018, because Ohio allegedly "flip-flopped" on the priority ranking it had assigned that waterbody in 2016. Compl. ¶¶ 124, 127. This fails to state a claim because U.S. EPA is not authorized "to review or pass

---

[1] The list of impaired waters is one component of a state's integrated report.

judgment on a state's priority ranking." *ELPC I*, 349 F. Supp. 3d at 712; *see also Sierra Club v. McLerran*, No. 11-cv-1759, 2015 WL 1188522, at *6 (W.D. Wash., Mar. 16, 2015) (the statute "provides no specific mechanism for reviewing this prioritization").

Plaintiffs attempt to distinguish *ELPC I* by arguing that it involved "a very different context."  Plaintiffs' Mem. in Opp. to Defs' Mot. to Dismiss ("Pl. Opp."), Doc. No. 24, at 10.  This Court's decision in *ELPC I*, however, is on point.  In that case, these same Plaintiffs argued that U.S. EPA necessarily approved "Ohio EPA's TMDL statements" when U.S. EPA approved Ohio's 2016 list.  349 F. Supp. 3d at 712 n.5. The Court disagreed, explaining that the relevant regulation, 40 C.F.R. § 130.7(b)(4), requires a priority ranking but "does not authorize the U.S. EPA to review or pass judgment on a state's priority ranking."  *Id*. Plaintiffs now point to the same regulation and make essentially the same argument, that by approving the inclusion of a 2018 priority ranking, U.S. EPA necessarily approved the merits of that prioritization.  That argument cannot be squared with the Court's recognition in *ELPC I* that while U.S. EPA must confirm whether or not

the state included a priority ranking, the agency does not take any judicially reviewable final agency action on the substance of that ranking.  *See also McLerran*, 2015 WL 1188522, at *6; 2006 Assessment Guidance (Def. Ex. 1 to U.S. Mem., Doc. 18-2) at 63 ("EPA will review the priority ranking but will not take action to approve or disapprove it.").

Plaintiffs argue that U.S. EPA "cannot be powerless" to review the substantive merits of a priority ranking, because U.S. EPA "has authority to determine TMDL schedules," which rely on priority rankings.  Pl. Opp. at 10.  But, as Plaintiffs acknowledge, U.S. EPA does not unilaterally determine TMDL schedules.  Instead, schedules "shall be determined" by U.S. EPA "and the State."  *Id.* (quoting 40 C.F.R. § 130.7(d)(1)).  As the court in *McLerran* explained, a state's "discretion to prioritize its TMDLs . . . is an important component of the CWA."  2015 WL 1188522, at *6.  One reason why the CWA "provides no specific mechanism for reviewing [a state's] prioritization" is that "[r]esource constraints compel difficult choices as to which TMDLs should be performed before others – a choice that states are often better

4

situated to make." *Id.* As more fully discussed in U.S. EPA's Section 303(d) Guidance, "[s]tates have considerable flexibility in deciding how best to" prioritize their waters for TMDL development. 2006 Assessment Guidance (Def. Ex. 1 to U.S. Mem., Doc. 18-2) at 63. This is because there are many considerations that may affect the timing and scope of any particular TMDL. For example, "a waterbody with a severe water quality problem may be given a high priority for TMDL development in light of the severity of the concern" or the severity of the problem may in another case "require complex analysis before developing a TMDL," pushing a state "to allow time to collect necessary information and complete the analysis." *Id.*

Plaintiffs also argue that this Court "acknowledged" that U.S. EPA "must have the power" to review the substance of a priority ranking, Pl. Opp. at 9, but Plaintiffs again misread the Court's prior opinions. In its April 2018 remand order, the Court explained that while U.S. EPA has some discretion in approving or disapproving a state's list of impaired waters, that discretion is limited by the requirements of 40 C.F.R. § 130.7(b), and in particular the requirement

5

that the state "assemble and evaluate" certain information.  But the Court specifically relied on section 130.7(d)(2), which provides that U.S. EPA "shall approve *a list* developed under § 130.7(b) . . . only if it meets the requirements of § 130.7(b)."  April 2018 Order, Doc. 29, at *9 (emphasis added) (quoting 40 C.F.R. § 130.7(d)(2)).  Section 130.7(d)(2), however, only directs U.S. EPA to approve or disapprove Section 303(d) lists and TMDLs submitted by the state, not the state's priority rankings.

Plaintiffs are also mistaken in arguing that because U.S. EPA actually addressed Ohio's priority ranking, U.S. EPA must have "full legal authority to review the substance of the 2018 Integrated Report."  Pl. Opp. at 11.  As noted above, U.S. EPA's comments on language in an integrated report (such as the state's "TMDL statements") does not equate to judicially reviewable final agency action on that language.  349 F. Supp. 3d at 709.  After all, U.S. EPA acts upon the "list," not the entirety of the integrated report.  *See* 40 C.F.R. 130.7(d)(2); *see also* 33 U.S.C. 1313(d)(2) ("The Administrator shall either approve or disapprove such identification [of waters on the list]….").  In addition,

6

what U.S. EPA actually said was that Ohio EPA's discussion "satisfies the requirement to submit a priority ranking consistent with EPA's regulations." Pl. Opp. at 11 (quoting Pl. Ex. C, at 1). As we explained in our opening brief, this simply confirms that the state has included a priority ranking that, consistent with U.S. EPA's regulations, "tak[es] into account the severity of the pollution and the uses to be made of such waters." 40 C.F.R. § 130.7(b)(4). While Plaintiffs may take exception with the narrative language that Ohio used to describe its pollution control strategy for western Lake Erie, that is a far cry from pleading a cognizable legal claim against U.S. EPA's action on Ohio's Section 303(d) list.

Because U.S. EPA is not authorized to review the merits of a state's priority ranking, Count 1's claim that U.S. EPA arbitrarily approved the priority ranking fails to state a claim.

## II. Count 2 Fails to Identify A Nondiscretionary Duty and Fails to State a Claim for a Constructive Submission.

In Count 2 Plaintiffs assert that U.S. EPA violated a nondiscretionary duty because Ohio allegedly decided not to undertake development of a TMDL for western Lake Erie, and U.S. EPA failed to

act on this constructive submission of no TMDL.  Compl. ¶¶ 130, 132.

Count 2 should be dismissed for two reasons:  the constructive

submission doctrine is inconsistent with the statute, and Plaintiffs'

assertions are in any event factually insufficient to establish a

constructive submission.

Contrary to Plaintiffs' assertion, Pl. Opp. at 12, this Court has not

"accepted the doctrine" of a constructive submission.  Instead, in *ELPC

I*, the Court described the doctrine and held that Plaintiffs' allegations

"do not satisfy [the doctrine's] demands."  349 F. Supp. 3d at 717.  The

Court's review of the constructive submission caselaw, therefore, was

dicta.  As we explained in our opening brief, that caselaw is flawed

because there is no statutory deadline for a state to submit a TMDL to

U.S. EPA, and no statutory provision that addresses the scenario where

a State delays or fails to make a submission.  *See* U.S. Mem. in Support

of Mot. to Dismiss ("U.S. Mem."), Doc. No. 18-1, at 15-19.

Apart from the jurisdictional analysis, Plaintiffs' allegations fail to

amount to a constructive submission even if the Court were to accept

such a doctrine.  The allegations do not meet the applicable legal

standard of showing Ohio to be "clearly and unambiguously refusing to submit TMDLs . . . in perpetuity." *ELPC I* at 715.  Plaintiffs argue that *ELPC I* is distinguishable because in that case the Court considered only Ohio's 2016 integrated report and did not address the 2018 report. Pl. Opp. at 14.  But Plaintiffs' allegations regarding the 2018 report fare no better.

Ohio's 2016 report explained that Ohio would pursue other approaches before turning to a TMDL, *see* U.S. Mem. at 20-21, and this Court concluded that Ohio's strategy to address water quality in the Lake does *not* constitute a constructive submission of no TMDL.  *ELPC I*, 349 F. Supp. 3d at 714-15.  In its 2018 report, Ohio once again confirmed that "[t]he western basin is a high priority for action (just not necessarily a lake TMDL), and the efforts will continue as stated in the report."  2018 Integrated Report (Def. Ex. 3 to U.S. Mem., Doc. 18-4) at D-31; *see also* Compl. ¶ 97 (omitting the parenthetical).  *See also* 2018 Integrated Report (Def. Ex. 3 to U.S. Mem., Doc. 18-4) at J-3 ("Ohio EPA is actively participating in TMDLs for tributaries as well as many other actions for Lake Erie … so priority for Ohio EPA-initiated *TMDLs*

9

is assigned a low priority for [the Lake Erie assessment units].")
(emphasis added).  Thus, nothing has changed that would give rise to a
constructive submission of no TMDL.

Plaintiffs argue that in the 2018 report Ohio "flip-flopped" on the
Lake's priority ranking, Pl. Opp. at 15, but there is no factual basis for
that allegation, and even if there were, it would not show that Ohio has
clearly and unambiguously refused to ever submit a TMDL for western
Lake Erie.  Ohio determines priority rankings based on a points system.
*See* 2018 Integrated Report (Def. Ex. 3 to U.S. Mem., Doc. 18-4) at J-4-5
(describing the priority points rubric) and L-44 (listing all waters on the
Section 303(d) list in order of prioritization).  Ohio's 2016 report
assigned 8 priority points to the Western Basin Open Waters, 5 points
to Sandusky Bay Open Waters, and 5 points to the Central Basin Open
Waters.  *See* 2016 Integrated Report Amendment (Def. Ex. 2 to U.S.
Mem., Doc. 18-3) at L3-1; *see generally* Compl. ¶¶ 95, 96, 99.  Ohio's
2018 report assigned 10 points to the Western Basin Open Waters, an
increase of two points, and assigned 5 points to the Sandusky Basin
Open Waters and to the Central Basin Open Waters, the same number

as in the 2016 report.  *See* 2018 Integrated Report (Def. Ex. 3 to U.S. Mem., Doc. 18-4) at L-43; *see generally* Compl. ¶¶ 97, 98.

Plaintiffs note that Ohio characterized the western basin as a high priority in 2016 and allege that Ohio changed the western basin to a low priority in 2018, Pl. Opp. at 15, but the documents on which Plaintiffs rely do not support that allegation.  Ohio stated in the 2016 report that "the western basin in particular is one of the highest, if not the highest, priority for Ohio to address."  Compl. ¶ 96.  But Ohio explained in that same report that it intends to "address" the western basin through many tools, such as various efforts under the Great Lakes Water Quality Agreement, but not at the outset a TMDL for the western basin.  2016 Integrated Report Amendment (Def. Ex. 2 to U.S. Mem., Doc. 18-3) at 9.  The 2018 report is no different.  In that report, Ohio confirmed that "[t]he western basin is a high priority for action (just not necessarily a lake TMDL), and the efforts will continue as stated in the report."  2018 Integrated Report (Def. Ex. 3 to U.S. Mem., Doc. 18-4) at D-31; *see also* Compl. ¶ 97 (noting that the 2018 Integrated Report reiterated that western Lake Erie is "a high priority

11

for action").  The underlying documents are clear that Ohio has not

changed course.  In both the 2016 and the 2018 reports, the state

describes the algae problem in the western basin as a high priority to

address, but establishment of a Lake Erie TMDL as a low priority as a

means to address that problem.

Plaintiffs seize on a single phrase in Ohio's 533-page 2018

Integrated Report regarding a "low priority" for TMDLs for the open

waters of western Lake Erie.  This is Plaintiffs' only evidence that there

was a substantive change in position between the 2016 and 2018 list

cycles—which, with respect to Lake Erie, were only separated by two

months.  But, for the reasons described above, notwithstanding the

language that Ohio might have chosen in its narrative description of its

efforts to reduce nutrient pollution in Lake Erie, the State's position—

that it would take some time to explore other nutrient pollution

reduction measures before turning to a Lake Erie TMDL—was

substantively unchanged from the 2016 submission to the 2018

submission.  This consistency is confirmed by Ohio's treatment of Lake

Erie within the priority ranking points system described above, which,

unlike the narrative discussion on which Plaintiffs rely, was systemically calculated and applied to every water body on Ohio's list as required by 40 C.F.R. § 130.7(b)(4).

Plaintiffs also argue that Ohio's "admission" that it currently has no finalized alternative to a TMDL amounts to a constructive submission.  Pl. Opp. at 15.  Yet, in the very next sentence, Plaintiffs acknowledge that Ohio is addressing Lake Erie through numerous state initiatives.  *Id.*, *see also* 2018 Integrated Report (Def. Ex. 3 to U.S. Mem., Doc. 18-4) at J-10-15 (describing Ohio's strategy for "Addressing Nutrients in Lake Erie" including "completed TMDLs for 22 of 32 project areas (watersheds) feeding into Lake Erie and work on the remaining 10 watersheds").

The only avenue Plaintiffs point to that Ohio is not currently pursuing is a restoration plan specifically to support assignment of Lake Erie to the subcategory for impaired waters, Category 5-alternative.  Plaintiffs are in error when they assert that Category 5-alternative is "the only potential avenue for a state to pursue 'alternative restoration approaches' rather than a TMDL."  Pl. Opp. at

13

15.  Creating a Category 5-alternative designation within a state's
Integrated Report is an optional "organizing tool" and it has no legal
significance to either the Clean Water Act or its implementing
regulations—a waterbody is either on the Section 303(d) list or not.
Compl. ¶ 86 (quoting U.S. EPA, Information Concerning 2016 Clean
Water Act Sections 303(d), 305(b), and 314 Integrated Reporting and
Listing Decisions at 9 (Aug. 13, 2015), *available at*
https://www.epa.gov/sites/production/files/2015-10/documents/2016-ir-
memo-and-cover-memo-8_13_2015.pdf).  A waterbody that is on the
Section 303(d) list is "identified" as impaired for the purposes of the
Clean Water Act regardless of whether or not the state has placed it in
Category 5-alternative.  And in either case, if an impaired waterbody
segment begins meeting water quality standards, then a state may
remove that waterbody from the Section 303(d) list before a TMDL is
established.

Moreover, Plaintiffs concede that Ohio has neither developed a
formal plan to place the western basin within the Category 5-
alternative nor shared a plan with U.S. EPA for consideration.  Compl.

14

¶¶ 13, 100; *see also* 2018 Integrated Report (Def. Ex. 3 to U.S. Mem., Doc. 18-4) at D-35 ("[T]he state must first develop an alternative plan and that plan must be reviewed and accepted by U.S. EPA before U.S. EPA can/will approve a section 303(d) list with a 5-alt category included.").[2]  Far from an "admission," this is a recognition that information gaps remain, and "the hands on the TMDL clock have just begun to turn." *ELPC I*, 349 F. Supp. 3d at 715; *see also McLerran*, 2015 WL 1188522, at *8 (declining to find a constructive submission, in part because the state had not compiled "enough scientific data that failing to submit a TMDL demonstrate[d] intent to abandon that TMDL").

---

[2] EPA reviews Category 5-alternative plans to provide technical assistance to the states and for inclusion in EPA's performance measures but does not take any legal action—such as approval or disapproval—of Category 5-alternative plans. Per EPA's 2016 Integrated Reporting Guidance, "[b]ecause waters for which alternative restoration approaches are pursued still remain on the CWA 303(d) list, EPA will not take action to approve or disapprove a State's alternative restoration approach under CWA 303(d)."  U.S. EPA, Information Concerning 2016 Clean Water Act Sections 303(d), 305(b), and 314 Integrated Reporting and Listing Decisions at 9 (Aug. 13, 2015), *available at* https://www.epa.gov/sites/production/files/2015-10/documents/2016-ir-memo-and-cover-memo-8_13_2015.pdf (quoted at Compl. ¶86).

Similarly, Plaintiffs wrongly assert that Ohio's statement that a TMDL "may be required" is sufficient to state a claim of a constructive submission.  Pl. Opp. at 16.  Again, that is no different from what Ohio stated in its 2016 report, and is a far cry from "proof that a state has 'clearly and unambiguously' decided not to submit any TMDLs."  *ELPC I*, 349 F. Supp. 3d at 716.  To the contrary, the 2018 report lists most of the Lake's assessment units as "Impaired, needs TMDL."  2018 Integrated Report (Def. Ex. 3 to U.S. Mem., Doc. 18-4) at J-16; *see also id*. at D-31 (explaining "why a TMDL is not being pursued *immediately*") (emphasis added).  This is plainly not an unambiguous refusal to *ever* submit a TMDL.

Finally, Plaintiffs assert that the lack of a deadline for a TMDL (or an alternative) amounts to a constructive submission of no TMDL.  Pl. Opp. at 16.  Plaintiffs rely on the *Ohio Valley Environmental Coalition* case, where the Fourth Circuit noted West Virginia's plan to develop TMDLs and U.S. EPA's commitment to ensure that the state meets its target dates.  *Id*. at 16-17, citing *Ohio Valley Env't Coal., Inc. v. Pruitt*, 893 F.3d 225, 231 (4th Cir. 2018).  The circumstances of that

16

case were very different than are present here.  West Virginia had asserted that "it cannot develop biologic impairment TMDLs due to state law" and the district court concluded that it was "clear and unambiguous that [West Virginia] ha[d] decided not to submit TMDLs for biologically impaired bodies of water."  *Ohio Valley Envtl. Coal., Inc. v. McCarthy*, 2017 WL 600102, at *18 (S.D.W. Va. Feb. 14, 2017).  Following that decision, U.S. EPA and West Virginia entered into a Memorandum of Agreement "in which West Virginia agreed to complete all of the TMDLs at issue … by June 30, 2026."  *Ohio Valley Envtl. Coal.*, 893 F.3d at 228.  The Fourth Circuit relied on that Memorandum of Agreement to reverse the district court and find that there was no constructive submission.  *Id.* at 232.  Contrary to Plaintiffs' arguments, the Fourth Circuit's decision does not suggest that binding "assurances" such as a Memorandum of Agreement are necessary in order to avoid a finding of constructive submission.  Rather, the *Ohio Valley Environmental Coalition* appeal represented an extraordinary situation where the district court concluded in the first instance that a constructive submission had occurred because the State had "clearly

and unambiguously" refused to submit TMDLs and then the Fourth Circuit concluded on the basis of new facts—foremost among them the Memorandum of Appeal—that the constructive submission had been subsequently cured.

A constructive submission "occurs 'only when the state's actions clearly and unambiguously' demonstrate an intent not to submit any TMDLs." *ELPC I*, 349 F. Supp. 3d at 714 (quoting *Hayes v. Whitman*, 264 F.3d 1017, 1024 (10th Cir. 2001)).  Ohio has a plan to address nutrient pollution in the western basin, which may ultimately include a TMDL for Lake Erie.  As in *ELPC I*, "the hands on the TMDL clock have just begun to turn," and Plaintiffs have failed to plead sufficient facts to state a claim that Ohio has "clearly and unambiguously *refused to submit* TMDLs . . . in perpetuity."  *ELPC I* at 715-16.

## CONCLUSION

Plaintiffs are essentially presenting a claim that this Court has already rejected, and the Court should dismiss the Complaint.

Respectfully submitted this 14th day of August 2019.

*/s/ Daniel R. Dertke*
DANIEL R. DERTKE

18

United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 514-0994
daniel.dertke@usdoj.gov

JUSTIN E. HERDMAN
United States Attorney

JODY L. KING (0094125)
Assistant United States Attorney
Northern District of Ohio
Four Seagate, Suite 308
Toledo, OH 43604-2624
Tel:  (419) 259-6376
Jody.King@usdoj.gov

Attorneys for Defendants

19

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2019, I electronically filed the foregoing REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS with the Clerk of the Court by using the CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

*/s/ Daniel R. Dertke*
Daniel R. Dertke