**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO,
WESTERN DIVISION**

| | | |
|---|---|---|
| ENVIRONMENTAL LAW & | * | Case number 3:19-cv-295 |
| POLICY CENTER, et al., | * | |
| | * | (Consolidated with 3:19-cv-873) |
| Plaintiffs, | * | |
| | * | Hon. James G. Carr |
| v. | * | |
| | * | |
| UNITED STATES | * | |
| ENVIRONMENTAL | * | |
| PROTECTION AGENCY, et al., | * | |
| | * | |
| Defendants. | | |

OPPOSITION BY THE BOARD OF LUCAS COUNTY COMMISSIONERS
TO DEFENDANTS' MOTION TO DISMISS

The Complaint by the Board of Lucas County Commissioners seeks

declaratory and injunctive relief to remedy the Defendants' unlawful acceptance of

the State of Ohio's non-compliance with the requirements of the Clean Water Act. In

particular, the Complaint seeks relief for the Defendants' acquiescence in Ohio's

failure to establish Total Maximum Daily Loads ("TMDLs") for the western basin of

Lake Erie. Relief is sought both under the citizen-suit provisions of the Clean Water

Act ("CWA"), 33 U.S.C. § 1365(a)(2) (Count 1), and under the Administrative

Procedure Act ("APA"), 5 U.S.C. § 706(2)(A) (Count 2).

Defendants have moved to dismiss the Complaint for failure to state a claim and for want of subject-matter jurisdiction. The motion is wholly without merit and must be overruled. As described more fully below, the Complaint more than adequately invokes the jurisdiction of this Court, and it likewise more than adequately states a claim for relief under both the CWA and the APA.

## I.      Factual and legal background.

This Court is fully familiar with Ohio's history of failing to meet its obligations under the CWA and under Ohio law with respect to the poisoning of the western basin of Lake Erie. As described in this Court's own prior decisions, this history is replete with neglect, intransigence, active resistance, responsibility-avoidance, disingenuousness, cynical manipulation, and more. And it is, regrettably, a history in which the Defendant U.S. EPA has served as a principal enabler of Ohio's unlawful conduct.

Under the CWA, Ohio was long ago required to list the western basin of Lake Erie as among the "impaired waters" of the State.  Ohio repeatedly failed to do so – and U.S. EPA repeatedly accepted that failure and countenanced Ohio's sloughing off of its legal responsibilities. Only after the filing of lawsuits, and even then only at the last possible moment, did U.S. EPA revoke its earlier approval of Ohio's lawless conduct.  And, worse, it did so in a way that was transparently designed to impede judicial review. *See generally* "Order", April 11, 2018, *Environmental Law & Policy Center*

*v. United States EPA*, case no. 17CV01514, N.D. Ohio, 2018 WL 1740146, at *5-*9 ("*ELPC I*").

Moreover, even after having been forced at long last to list the western basin of Lake Erie on its impaired-waters list, Ohio maintained its resistance by affirmatively declining to take the mandatory next step of establishing a Total Maximum Daily Load ("TMDL") for the phosphorus pollution that is the chief cause of the Lake's impairment. *Environmental Law & Policy Center v. United States EPA*, 349 F.Supp. 3d 703, 708 (Oct. 3, 2018) ("Developing a TMDL is a bedrock obligation under the CWA. **** Creating TDMLs is, moreover, not optional.") ("*ELPC II*").

Instead, in May 2018, Ohio filed an amendment to its 2016 *Integrated Water Quality Monitoring and Assessment Report* ("*2016 Ohio Report Amendment*"), in which it asserted that "the best approach for solving the issues in western Lake Erie is through *** collaborative processes *** [that] afford a holistic, multi-jurisdictional perspective that does not exist in a traditional TMDL process." *2016 Ohio Report Amendment*, p. 9. Despite the CWA's unambiguous, non-optional mandate, Ohio said, it would begin to develop Lake Erie TMDLs only if, at some unspecified future time, its "collaborative" and "holistic" approach had failed. *Id.* No timeline was established, nor was any standard for determining failure defined.

Moreover, even though the 2016 amendment had described "the western basin [of Lake Erie] in particular [as] one of the highest, if not the highest, priority for Ohio

to address," the State's subsequent 2018 Report ("*2018 Ohio Report*") nonetheless assigned the basin a "low priority" for the development of TMDLs. *Compare 2016 Ohio Report Amendment*, p. 9, *with 2018 Ohio Report*, p. D-35. This change of course relied, yet again, on the State's "holistic" approach to healing the Lake: the Lake Erie waters that were supposedly the State's highest priority for remediation, it turned out, were only a low (or non-existent) priority for the development of TMDLs for the simple reason that Ohio thinks holistic collaboration is a better idea. The State engaged in this slalom, despite the unavoidable legal point that creation of a TMDL is the essential step in remediation, a step expressly required by the CWA.

Notably, Ohio expressly rejected the possibility of assigning the Lake to the newly-created "5-alt" priority, which would permit the State to take account of alternative (and even "collaborative" and "holistic") plans for pollution reduction. That category was being "considered" by Ohio, the Report said, but the State had "not yet developed" a formal proposal because it lacked any actual, completed plan that would satisfy the requirements for such a designation. *2018 Ohio Report*, p. D-35. Unstated, of course, was the additional point that even a "5-alt" priority would still have required the State to develop TMDLs for the Lake. *Id.*, p. J-1 ("In 2016, a new subcategory in Category 5 (5-alternative or 5-alt) was added to report on alternative restoration approaches for CWA 303(d) listed waters. Such waters will still require TMDLs until water quality standards are achieved.").

-4-

On July 9, 2018, U.S. EPA approved Ohio's impaired-waters list in a decision that included a finding that the State's priority rankings were "consistent with EPA's regulations." *EPA Decision Document for Approval* (July 2018), p. 1 ("*2018 Decision*"). The approval also took note of the State's explanation "regarding why a TMDL is not being pursued for the Lake immediately," even though the State's report "indicates the western basin load reductions are a priority." *Id.*, p. 18. As to this, the approval concluded that U.S. EPA "finds [Ohio's] responses to be reasonable, and concludes that [the State] has satisfied the requirement to submit a priority ranking for Lake Erie consistent with the regulations at 40 C.F.R. §130.7(b)(4)."

In short, having at last declared the western basin of Lake Erie to be impaired, Ohio has nonetheless affirmatively declined to adopt – or even to begin thinking about adopting – the "not optional" TMDLs for those very impaired waters. And the Defendants have affirmatively acquiesced in that decision.

## II.     Argument.

The legal principles involved in this case are straightforward, as is their application to the facts at hand. Ohio has expressly declined to take any steps toward satisfying its obligation to establish TMDLs for the waters of the western basin of Lake Erie, even though those waters are included on the state's impaired-waters list. *See* 33 U.S.C. § 1313(d)(1)(C). At the heart of the case is a simple dyad: either the Defendants have approved Ohio's unlawful intransigence, or they have not.

If the former is the case, then the EPA's action is arbitrary, capricious, and contrary to law, and the action is subject to corrective action by this Court under the APA. 5 U.S.C. § 706(2)(A).

If, on the other hand, Defendants have not taken agency action amounting to approval of Ohio's failure, then Defendants are in default of their own obligation to establish TMDLs when a State fails to do so in accordance with the CWA, 33 U.S.C. § 1313(d)(2).  Defendants' performance of that obligation is enforceable by this Court under the citizen-suit provisions of the CWA. 33 U.S.C.  §1365(a)(2).

Defendants' motion claims first that Count 1 of the Complaint should be dismissed because U.S. EPA's acquiescence in Ohio's departure from the CWA's requirements is not actionable under section 1365(a)(2). *Memorandum in Support of Motion to Dismiss Board of Lucas County Commissioners' Complaint*, part I ("*Defendants' Memorandum*"). According to Defendants, there is no statutory deadline for the submission of TMDLs and no statutory process for EPA's establishment of TMDLs when a State fails to submit them (as distinct from cases in which a State submits a TMDL that is then disapproved, *see* 33 U.S.C. § 3313(d)(2)). For that reason, Defendants say, when a state wholly fails to submit a TMDL, U.S. EPA has no non-discretionary duty regarding the State's failure that can be enforced in a suit under section 1365. *Defendants' Memorandum*, pp. 9-11. This claim is, of course, largely inconsistent with the approach to the "constructive submission" doctrine taken by

this Court in *ELPC I* and *ELPC II*. Thus, Defendants argue in the alternative that the facts of this case do not warrant application of the doctrine. *Id.*, pp. 11-16.

Second, Defendants argue that Count 2 of the Complaint should be dismissed because, Defendants say, there has been no final agency action reviewable under the APA. *Defendants' Memorandum*, part II. According to Defendants, an agency's claimed unlawful *failure* to act is not reviewable under 5 U.S.C. § 706(2)(A) but only under 5 U.S.C. § 706(1).[1] And the motion argues that Defendants' failure to act is not cognizable under section 706(1) because 33 U.S.C. § 1365 supplies the exclusive means for addressing U.S. EPA's failure to carry out its statutory obligations under the CWA.

At virtually every step in these tortuous claims, Defendants are mistaken.

---

[1] 5 U.S.C. § 706:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and
(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
        (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
****

As described in Part A, below, a State that entirely fails to submit a required TMDL has "constructively submitted" a determination that no TMDL is required. In that circumstance, the U.S. EPA is then required to disapprove the constructive submission and establish a TMDL itself. As also described in Part A, in this case Ohio has not merely "constructively" submitted a refusal to establish TMDLs for the western basin of Lake Erie: it has gone further and affirmatively stated that no such TMDL will be forthcoming because the State is pursuing its "holistic" and "collaborative" approaches instead. As a consequence of this unmistakable and legally cognizable action, Defendant U.S. EPA is required to disapprove the State's constructive submission and proceed in accordance with 33 U.S.C. § 3313(d)(2) to establish the required TMDLs itself.

As described in Part B, below, judicial review of the actions of U.S. EPA regarding Ohio's CWA submissions in this case is well within the authority conferred by the APA. The agency's July 9, 2018, *Decision Document for Approval* expressly, specifically, and finally approved Ohio's 2018 impaired-waters list. And that Decision expressly, specifically, and finally determined that Ohio's illusory "prioritization of its waters, including for Lake Erie, satisfies the requirement to submit a priority ranking consistent with EPA regulations" (*2018 Decision*, cover letter & pp. 1, 17). The U.S. EPA made this final determination, notwithstanding that Ohio's submission includes no provision for the establishment of TMDLs for the

-8-

Lake Erie. The 2018 approval is undoubtedly final agency action, it is undoubtedly reviewable, and it is undoubtedly agency action that is arbitrary, capricious, an abuse of discretion, and contrary to law.

> **A.  In the face of Ohio's unambiguous refusal to establish TMDLs for the western basin of Lake Erie, Defendant U.S. EPA itself is required to establish the necessary TMDLs pursuant to 33 U.S.C. § 1313(d)(2).**

Under settled precedents, if a State fails to submit a required TMDL in circumstances that "clearly and unambiguously express [the State's] decision to submit no TMDL for a particular impaired waterbody," the State is deemed to have made a "constructive submission" that no TMDL is required. *Hayes v. Whitman*, 264 F.3d 1017, 1024; *Scott v. City of Hammond*, 741 F.2d 992, 996–97 (7th Cir. 1984) (per curiam). In those circumstances, U.S. EPA is required to disapprove the submission as contrary to the CWA, and is further required to itself establish the required TMDL. *Columbia Riverkeeper v. Pruitt*, 337 F.Supp.3d 989, 995-998; *Sierra Club v. McLerran*, 2015 WL 1188522 (W.D. Wash. 2015).

Defendants here argue first against the very existence of the constructive-submission doctrine, contending that it is an unauthorized and atextual addition to the CWA. But the argument is necessarily a rearguard action, since *every* court to have considered the question over the past 35 years – including this Court – has acknowledged the doctrine's viability and legitimacy. *See ELPC II*, 349 F.Supp.3d at

713-714. Far from being a judicial usurpation, the doctrine is drawn directly from the CWA's text, supplying a principled basis for determining what constitutes a "submission" within the meaning of 33 U.S.C. § 1313(d)(2).[2]

Defendants' second line of argument contends that the facts of this case do not satisfy the requirements for finding that Ohio's recalcitrance regarding the western basin of Lake Erie amounts to a constructive submission of no TMDL for the Lake. After all, Defendants say, this Court concluded only last year that the facts were insufficient for that purpose. The Lake was belatedly added to the State's impaired-waters list only as recently as May 2018, and, according to Defendants, a finding of constructive submission requires "years of inaction" following such a designation. The circumstances, in Defendants' view, must be such as to demonstrate the State's unwillingness "to *ever* submit TMDL", an unambiguous refusal to submit TMDLs "in perpetuity." *Defendants' Memorandum*, pp. 12-13 (emphasis in original).

Defendants' emphasis on the passage of time as central to the constructive-submission analysis both overstates this Court's prior decisions and mistakes the

---

[2] Defendants also parenthetically suggest that the doctrine should be limited to cases of state-wide failure to submit TMDLs rather than to discrete failures regarding particular waterbodies. *Defendants' Memorandum*, pp. 15-16. Because this claim is merely mentioned (and then only parenthetically), without further argument or authority, it should suffice to say that the suggestion appears to have been rejected by every court to have considered it – including this one. *See ELPC II*, 349 F.Supp.3d 703, 714-715. *See also Columbia Riverkeeper*, *supra*, 337 F.Supp.3d at 996 (collecting cases).

character of the constructive-submission doctrine. The doctrine is not merely a remedy for undue delay, a sort of laches-in-reverse equitable principle. Rather, a constructive submission is shown when the State's actions and inactions clearly and unambiguously (and not merely by passage of time) express the State's *present* decision to forgo establishing TMDLs for a particular waterbody in the manner required by the CWA.

Time is often relevant to the inquiry: a long-term failure to submit TMDLs is undoubtedly probative as to whether a submission will be forthcoming. But the inference to be drawn from even a long delay can be refuted if the State has "a credible plan in place" for the development of the missing submissions. *Ohio Valley Environmental Coalition v. Pruitt*, 893 F.3d 225, 230 (4th Cir. 2018).  And contrariwise, a State's express statements, early on, that it has no plan (credible or otherwise) to develop a TMDL for a particular waterbody is strong evidence that the State has decided to default on that statutorily required task. *Cf. Columbia Riverkeeper*, *supra*, 337 F. Supp.3d 989, 996-998 (State's repeated requests that U.S. EPA develop TMDLs for particular waterbody indicative of State's decision not to develop the TMDLs itself).

The probative force of such statements stems, not from time's passing, but from the clarity of the statements and the surrounding action, or inaction.  That is to say, in each instance the question is not how much time has elapsed: it is, rather,

-11-

whether the circumstances clearly and unambiguously express the State's actual determination not to develop and submit the required TMDL in the manner required by the CWA.

In this case, Ohio's conduct could scarcely be more clear and unambiguous. The State has spent more than a decade avoiding inclusion of the western basin on the impaired-waters list, precisely so that it could avoid submitting a TMDL for the basin. Having finally been effectively shamed into adding the Lake to the impaired-waters list, the State affirmatively and repeatedly declined to develop and submit a TMDL for that list, insisting that its "collaborative" and "holistic" approach is a superior method of addressing the disastrous levels of pollution affecting the Lake and its users. The State has no plan – credible or incredible – for developing a TMDL for the western basin. It acknowledges that it might be forced to develop a TMDL at some indeterminate future time when its vaporous efforts at holistic collaboration (for which it also has no concrete plan) fail to produce results. But it doesn't even have a plan, or a metric, for that virtually certain eventuality.

The State, in short, has affirmatively declined to submit a TMDL for the Lake, and it has affirmatively repudiated any idea that it might have a credible plan to develop one. Indeed, the State has made clear that it will *not* submit a TMDL unless it is forced to do so by some undefined change in circumstances at some indefinite time in the future. It is difficult to imagine a more clear and unambiguous expression of

the State's decision to abandon its statutory responsibility for submitting a TMDL for each of the waterbodies on its impaired-waters list.

Nonetheless, U.S. EPA argues, the State's conduct does not support a finding of constructive submission because the clear refusal to establish a TMDL for the western basin of Lake Erie is somehow qualified by the State's breezy avowal that it *might* develop a TMDL if the detour into holistic collaboration doesn't work out as hoped. ("Hoped" is necessarily the operative word here, since there is no evidence that the State's alternative course involves anything definite enough to qualify as "planned".) According to Defendants, the contingent (and remote) possibility that a TMDL will be forthcoming at some indefinite (and remote) time in the future shows that the State has not abandoned its obligations "in perpetuity." In the absence of "an unambiguous refusal to *ever* submit a TMDL," Defendants claim, there can be no constructive submission. *Defendants' Memorandum*, pp. 12-13 (emphasis in original).

The central flaw in this proposition is that it is entirely incompatible with the terms of the CWA. The statute is clear. Once a waterbody is included on a State's impaired-waters list, development and submission of a TMDL for that waterbody is not optional. A State may take time to fulfill its obligations in this regard, but the time must be used in activities addressed to accomplishing the statutorily mandated outcome: production of a TMDL. A State may believe that there are better approaches to remediation (like holistic collaboration), and it is certainly free to

-13-

pursue them – but only as long as the State is also in compliance the CWA's requirement that it develop and submit TMDLs for listed waterbodies.

The CWA, as tolerant of state and federal agency discretion as it may be, does not countenance the kind of frolic and detour that Ohio is engaged in – and that U.S. EPA has approved.  Even if alternative approaches could be shown to be in some way objectively preferable to submission of a TMDL, submission of a TMDL would still be required, because that is the system that Congress adopted and required in the express terms of the CWA. The submission requirement is not – and cannot be treated as – contingent, as applying only in the event that some other, non-statutory remediation scheme fails. Thus, a State runs afoul of the CWA when it treats – as Ohio does here – its alternative approaches, not as additions to, but as substitutes for fulfillment of this core CWA requirement.

As alleged in the Complaint, Ohio has not submitted a TMDL for the western basin of Lake Erie. The State has no credible plan for developing such a TMDL, and it is not currently engaged in developing one. It has announced that it *might* submit a TMDL if its holistic collaboration endeavors don't come to fruition at some indeterminate time in the future. Those facts are more than sufficient to allege a constructive submission by Ohio that it has decided not to adopt a TMDL for the Lake, thereby triggering U.S. EPA's obligation to reject the submission and itself

-14-

establish the TMDL. Defendants' motion to dismiss as to Count 1 should be overruled.

**B.     U.S. EPA's approval of Ohio's 2018 impaired-waters list and priority ranking is a final agency action reviewable under the APA.**

Count 2 of the Complaint alleges that the conduct of U.S. EPA in failing to disapprove Ohio's unlawful conduct is arbitrary, capricious, an abuse of discretion, and contrary to law, and that this unlawful failure should be set aside pursuant to the APA. 5 U.S.C. § 706(2)(A). Defendants move to dismiss this count on the ground that the alleged *failures* to act cannot constitute agency *action* reviewable under section 706(2)(A). Failures to act, Defendants claim, are reviewable under section 706(1), but there can be no section 706(1) claims in this case because the citizen-suit provisions of the CWA, 33 U.S.C. § 1365(a)(2), provide the sole remedy for a failure to act on the part of U.S. EPA. *Defendants' Memorandum*, pp. 16-17.

Contrary to Defendants' assertions about section 706(2)(A), the statute's specification of reviewable "agency action" is itself statutorily defined, and the definition by its terms extends to failures to act: "(13) **'agency action' includes** the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, **or failure to act**." 5 U.S.C. § 551(13), *made applicable to section 706 by* 5 U.S.C. § 701(b)(2) (emphasis added). And in this case the failure to act is embedded

-15-

in conduct – the approval of Ohio's 2018 Report – that even Defendants implicitly concede amounts to a reviewable final agency action.

U.S. EPA's formal approval of the 2018 Report included approval of Ohio's revised impaired-waters list *and* Ohio's priority designation.  And it reflected an express acquiescence in Ohio's decision not to develop and submit a TMDL for the western basin of Lake Erie, despite the State's identification of the basin as a priority for the State. The Complaint alleges that this acquiescence – the failure to disapprove Ohio's Report and to require Ohio to establish TMDLs for Lake Erie – is contrary to law.

If, as described above, U.S. EPA's failure was not a final agency action, it is reviewable in a CWA citizen suit as involving a failure to take action required by the CWA. If, on the other hand, the failure was a final agency action, it is fully reviewable under section 706(2)(A), and Count 2 so claims. The Rules of Civil Procedure have permitted alternative pleading since 1938. *See* Rule 8(d)(2), F.R.Civ.Proc. Defendants' motion to dismiss must be overruled as to Count 2.

## III.  Conclusion.

For the foregoing reasons, Defendants' motion to dismiss must be overruled. Respectfully submitted,

_____ */s/ Fritz Byers* _____

Counsel for Plaintiff
Board of Lucas County Commissioners

## CERTIFICATE OF SERVICE

I certify that  on this 3rd day of September, 2019, a true and correct copy of the

foregoing Opposition by the Board of Lucas County Commissioners

to Defendants' Motion to Dismiss was served on counsel of record through the Court's

CM/ECF system.


                                                    _____/s/ Fritz Byers_____

                                                    Counsel for Plaintiff

                                                    Board of Lucas County Commissioners